IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Crim. Action No. 10-13 GMS |
| JOEVANY T. LUNA, | ) | |
| Defendant. | ) | |

## MEMORANDUM

### I. INTRODUCTION

The defendant, Joevany T. Luna, moves to suppress physical evidence seized pursuant to a search warrant executed on October 23, 2009. (D.I. 16, Ex. A.) Luna alleges that the Justice of the Peace did not have statutory authority to issue the search warrant, and that the firearms and ammunition were therefore seized in violation of the Fourth Amendment warrant requirement. (D.I. 16 at ¶ 6.) After having reviewed the parties' submissions and the applicable law, the court will deny the defendant's motion.

### II. BACKGROUND

An affidavit of probable cause was filed in support of the search warrant application. (D.I. 16, Ex. A at 5.) Randolph Pfaff ("Pfaff"), a sworn police officer employed by the Wilmington Police Department ("WPD") and assigned to the Drug Enforcement Administration ("DEA") task force, submitted the affidavit of probable cause. (Id.) According to the affidavit, on August 31, 2009, Luna was involved in an investigation in Wilmington, Delaware, by the WPD. (Id.) At that time Luna was charged with the following offenses: "Possession of a Firearm During the Commission of a Felony, Assault Second Degree Recklessly or Intentionally Causes Phys [sic] Injury Weapon, Possession of a Deadly Weapon (Firearm) By Person

1

Prohibited, Aggravated Menacing, Conspiracy Second Degree-Agreement to Aid Another Felony/Overt Act, and Malicious Interference Emergency Communications Intentionally Prevent or Hinder." (Id.) The affidavit notes that Luna is "currently released on bail for this incident" and that "the handgun used in this incident is still outstanding." (Id.) Additionally, the affidavit states that a "DELJIS check" indicated that on January 8, 2007, Luna "was found guilty of Possession Purchase Own or Control a Firearm or Ammunition by a Person Prohibited" in the New Castle County Superior Court. (Id.)

On October 16, 2009, the police department in Perryville, Maryland, obtained an arrest warrant for Luna for "Attempted 1st Degree Murder, Assault 1st Degree, and Use of a Handgun Felony Violent Crime." (D.I. 16, Ex. A at 6.) That arrest warrant was "entered [into the National Crime Information Center]" on October 17, 2009. (Id.) The affidavit notes that "the handgun used in this incident is still outstanding." (Id.)

During the fourth week of October 2009, Pfaff was provided with information by a confidential informant ("CI1"). (Id.) CI1 advised Pfaff that Luna "is dating/living with a black female known only as Shae" and provided Luna's cellular phone number. (Id.) During that same week, David Hughes ("Hughes"), a special agent of the DEA, was provided with information by a different confidential informant ("CI2"). (Id.) CI2 was known by Hughes as a "past proven and reliable" confidential informant. (Id.) CI2 advised Hughes that Luna "is dating/living with a black female known only as Shae who lives behind the Buffalo wild wings on route 40 in Christiana Delaware." (Id.) The officers were able to determine that "[t]he residence of 839 Hastings Court Christiana, Delaware 19702 is located behind" the aforementioned restaurant. (Id.)

2

On October 22, 2009, Hughes had contact with a woman named Leonshay Tuller who provided him with the following address – 839 Hastings Court Christiana, Delaware 19702 – and Luna's cellular phone number, which matched the phone number given by CI1. (Id.) The next day, on October 23, 2009, Pfaff requested "a search warrant to be issued in order to enter 839 Hastings Court Christiana, Delaware 19702 to apprehend [Luna] for Attempted 1st Degree Murder, as well as, recover the handgun used to prevent its removal and/or deliberate destruction." (Id.)

Such were the facts stated in the affidavit of probable cause. Based on the affidavit, a search warrant was issued on October 23, 2009, by a Justice of the Peace for New Castle County, Delaware. (D.I. 16, Ex. A at 3.) The search warrant was issued generally for Luna and the Hastings Court residence. (Id.) More specifically, the search warrant was issued for:

> [1] The body of [Luna] AKA "Moon" BMN 3/24/1975 . . . SBI# 00470488, FBI# 148941VB2.
>
> [2] Any weapons, particularly handguns, ammunition, holsters or receipts that suggest the sale or purchase of the aforementioned items.
>
> [3] Any documents, papers, photos, receipts or materials which indicate a second residence for the suspect(s) or the location of any evidence regarding this investigation of Fugitive from another state (State of Maryland, Attempted Murder 1st).
>
> Which said property, articles, papers or things were, are, or will be used and/or possessed and/or represents evidence of a violation of the Delaware Criminal Code, Title 11, Section 2513, in that Fugitive from another state.

(Id.) On that same day, police officers used the search warrant to enter the Hastings Court residence, arrest Luna, and seize the firearm and ammunition. (D.I. 16, Ex. A at 2.) Luna now moves to suppress the firearm and ammunition on the ground that the search was conducted in violation of the Fourth Amendment. For the following reasons, the court will deny the defendant's motion.

3

## III. DISCUSSION

The defendant urges the court to find that the Justice of the Peace ("JP") did not have statutory authority to issue the search warrant, and that the firearms and ammunition were therefore seized in violation of the Fourth Amendment warrant requirement. (D.I. 16 at ¶ 6.) More precisely, the defendant asserts that the warrant is not valid because the JP issued the warrant for "evidence of a violation of the Delaware Criminal Code, Title 11, Section 2513 . . . Fugitive from another state," which is a procedural law and not a substantive criminal law that can be violated. (Id. at ¶¶ 13, 15-16.) In light of the underlying facts of this case, to accept such a view would be to elevate form over substance. The government correctly points out that the JP possessed the requisite statutory authority and that the constitutional standard, requiring probable cause, was met. (D.I. 21 at 4-10; D.I. 23 at 1-4.) The government also rightly points out that even if the warrant was defective as a matter of law, the good faith exception applies. (D.I. 21 at 11-15; D.I. 23 at 5-7.) Nevertheless, the court will address the defendant's contentions.

### A. The Justice of the Peace Had a Substantial Basis to Issue Warrant

The defendant first argues that a search warrant may not be upheld based upon theories of probable cause which were not passed upon by the issuing magistrate. (D.I. 22 at 3.) Luna cites *Massachusetts v. Upton*, 466 U.S. 727 (1984) in support of his argument. Luna claims that "the magistrate's finding of probable cause was based on the extradition statute" and that "[t]o uphold the warrant on an alternative theory of probable cause would invite the very 'after-the-fact, *de novo* scrutiny' which was rejected in *Gates*." (D.I. 22 at 4-5.) The court is not persuaded.

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court held that "the Fourth Amendment's requirement of probable cause for the issuance of a warrant is to be applied, not according to a fixed and rigid formula, but rather in the light of the 'totality of the circumstances'

4

made known to the magistrate." *Upton*, 466 U.S. at 728. The Supreme Court "emphasized that the task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Id.* Also, the Third Circuit has held that a "reviewing court must determine only that the magistrate judge had a 'substantial basis' for concluding that probable cause existed to uphold the warrant." *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000). Moreover, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the *affidavit* before him . . . there is a fair probability that contraband or evidence of *a crime* will be found in a particular place." *Gates*, 462 U.S. at 238 (emphasis added).

Here, a detailed affidavit of probable cause was submitted with the search warrant application. (D.I. 16, Ex. A at 5-6.) As discussed above, the affidavit specified outstanding criminal charges in both Delaware and Maryland. (Id.) The apparent impetus for the search warrant was the recent Maryland arrest warrant issued for attempted first degree murder, assault, and use of a handgun. (D.I. 16, Ex. A at 6.) Certainly these facts taken together indicate that "there is a fair probability that . . . evidence of *a crime* will be found in a particular place." *Gates*, 462 U.S. at 238 (emphasis added.) Indeed, the facts contained within the affidavit constitute substantial evidence, which adequately support the JP's decision to issue a search warrant in this case. The defendant has failed to cite to a case, from the Supreme Court or the Third Circuit, holding that the validity of a search warrant is based on the specific statute cited as opposed to probable cause of a crime.[1] Luna's citation of *Upton*, only supports this court's

---

[1] However, the government provided a string cite of cases to the contrary. (See D.I. 21 at 10.) The cited cases support the proposition that "[t]here is no constitutional requirement for an affidavit and search warrant to list all of the specific crimes alleged in an affidavit, so long as the affidavit sets forth probable cause that an offense was committed." (Id.)

decision that the JP had a substantial basis for concluding that probable cause existed. Therefore, the court finds that the JP issued a valid warrant.

**B.     The Justice of the Peace Had Authority and the Good-Faith Exception Applies**

The defendant also argues that the "good faith" exception does not apply where the magistrate exceeded his authority when he issued the search warrant. (D.I. 22 at 5.) He specifically argues that the good faith exception is not applicable because the warrant was issued by a person lacking the requisite legal authority. (Id.) Luna cites *United States v. Scott*, 260 F.3d 512 (6th Cir. 2001) in support of his argument. Notwithstanding the fact that *Scott* is a Sixth Circuit case and purportedly persuasive, the court is not persuaded because *Scott* is distinguishable from this case.

In *Scott*, the Sixth Circuit addressed a case of first impression. The Sixth Circuit "addressed the issue of whether [the good faith exception] applies when an officer relies on a warrant signed by an individual wholly without legal authority to issue a warrant." *Scott*, 260 F.3d at 515. The Sixth Circuit held that "when a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void *ab initio*." *Id.* *Scott* is factually different and, therefore, inapposite. In that case a police officer obtained a warrant from a retired judge. *See id.* Here, the police officer sought and obtained a warrant from an active, duly authorized justice of the peace.[2] Thomas Brown, a JP, signed the warrant on October 23, 2009, and an official Justice of the Peace Court seal was applied. (D.I. 16. Ex. A at 3.) In the state of Delaware, a justice of the peace is authorized to issue a search warrant pursuant to 11 Del. Code § 2304. Thus, the JP was "clothed in the proper legal authority." *Scott*, 260 F.3d at 515. Furthermore, another JP signed a certification form on April 4, 2010, confirming the validity of the issued warrant and its accompanying application and affidavit.

---

[2] The active status of the Justice of the Peace has not been challenged.

(D.I. 16, Ex. A at 1.) Finally, both parties point out that Delaware courts are empowered to issue search warrants pursuant to 11 Del. Code § 2305(1)-(6). (*See* D.I. 16 at 3-4 and D.I. 21 at 6-7.) For these reasons, the court finds that *Scott* does not apply to this case and the defendant's reliance upon it is misplaced.

The Supreme Court has held that "an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. Tampa*, 407 U.S. 345, 350 (1972). For the reasons discussed above, the court finds that the JP was (1) neutral and detached and (2) capable of determining whether probable cause existed. Therefore, the JP issued a valid search warrant.

Even if the search warrant was technically or legally deficient, the police officers were entitled to rely on the warrant to execute the search of Luna and to seize physical evidence. The Supreme Court has made it clear that:

> [W]here the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

*United States v. Leon*, 468 U.S. 897, 919-920 (1984) (internal citations omitted). Furthermore, "[t]his is particularly true . . . when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920. Here, a warrant was obtained based on outstanding charges, an out-of-state arrest warrant, and a local investigation. The defendant does not allege that the police acted unreasonably or beyond the scope of the warrant. Therefore, the court finds that the good faith exception applies.

7

## IV. CONCLUSION

For the aforementioned reasons, the defendant's motion to suppress is DENIED.

Dated: February 18, 2011

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. Action No. 10-13 GMS |
| ) | |
| JOEVANNY T. LUNA, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's motion to suppress (D.I. 16) is DENIED.

Dated: February 14, 2011

_____
CHIEF, UNITED STATES DISTRICT JUDGE